AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Northern District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Acer Chromebook, Serial Number NESHEAA0024110BE7E7600;
Lenovo Laptop, Serial Number CB20235193; Gorilla Thumb Drive;
Imatic 2GB Thumb Drive, as more fully described in Attachment A

)
)
)
)
)
)
)

Case No.  5:17-MJ-550 (TWD)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Acer Chromebook, Serial Number NESHEAA0024110BE7E7600; Lenovo Laptop, Serial Number CB20235193; Gorilla Thumb Drive; Imatic 2GB Thumb Drive, as more fully described in Attachment A

located in the _____ Northern _____ District of _____ New York _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 841 and 846 | Attempted Distribution of a Controlled Substance |
| 21 U.S.C. Sections 952 and 960 | Importation of a Controlled Substance |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Michael J. Ball, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  12/6/2017

City and state:  Syracuse, New York

_____
*Judge's signature*

Hon. Thérèse Wiley Dancks, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A
## DESCRIPTION OF ITEMS TO BE SEARCHED

1. Acer Chromebook, Serial Number NESHEAA002411OBE7E7600

2. Lenovo Laptop, Serial Number CB20235193

3. Gorilla Thumb Drive

4. Imatic 2GB Thumb Drive

All items are currently in the custody of the Syracuse, New York office of Homeland Security Investigations.

## ATTACHMENT "B"
## ITEMS TO BE SEARCHED FOR AND SEIZED

Items evidencing violations of Title 21, United States Code, Sections 952, 960(a)(1) & (b)(3) (Importation of a Controlled Substance) and Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), & 846 (Attempted Distribution of a Controlled Substance), including, but not limited to the following:

A.      Any and all computer passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code;

B.      Any and all documents, correspondence, records, E-mails, chats, instant messaging, and Internet history pertaining to potential violations of Title 21, United States Code, Sections 952, 960(a)(1) & (b)(3) (Importation of a Controlled Substance) and Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), & 846 (Attempted Distribution of a Controlled Substance);

C.      Any and all lists of customers and related identifying information;

D.      Any and all information pertaining to types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

E.      Any and all information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information)

F.      Any and all information recording **LAGOE'S** schedule or travel from **MARCH 11, 2017** to the present;

E.      Records of IP Addresses used and other records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

F.      Any and all bank records, checks, credit card bills, account information, and other financial records;

G.      Evidence of user attribution showing who used or owned the items described in Attachment A at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

The authorization includes the search of electronic data to include deleted data, remnant data and slack space.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

STATE OF NEW YORK      )
COUNTY ONONDAGA     )   SS:
CITY OF SYRACUSE      )

I, Michael J. Ball, being duly sworn, deposes and states:

1. I have been employed as a Special Agent with Homeland Security Investigations ("HSI"), within the United States Department of Homeland Security ("DHS"), formerly the United States Customs Service, since April 2002. As a Special Agent, I am a federal law enforcement officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Sections 841(a)(1), 846, 952, 960(a)(1) and 963, and Title 18, United States Code, Section 545 et seq. As part of my employment with HSI, I successfully completed the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the Immigration and Customs Enforcement Basic School, both of which included intensive instruction with regard to Customs laws, financial crimes and drug enforcement, including the application for, and execution of, search and arrest warrants, as well as the application for criminal complaints, and other legal process. I am currently assigned to HSI Syracuse.

2. I have participated in investigations targeting the smuggling, trafficking, and distribution of narcotics and I have extensive training on these and related topics. I am familiar with how controlled substances are obtained, diluted, packaged, distributed, sold, and used, as

1

well as how narcotics traffickers use other persons and/or their personal property to facilitate their illegal activities. I have participated in numerous synthetic narcotics-related criminal investigations and have participated in the preparation and execution of numerous synthetic narcotics-related search warrants.

3. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation, discussions with other agents of HSI and other law enforcement officials, interviews of witnesses, and my review of relevant records and reports. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by an HSI agent, law enforcement officer, or witness who had either direct or hearsay knowledge of that statement, to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among statements made by others and are stated in substance and in part unless otherwise indicated. Any interpretations or opinions rendered in this affidavit are based on my training and experience in the context of the facts of this investigation. Since this affidavit is being submitted for the limited purpose of obtaining a search warrant, I have not included every fact known to me concerning this investigation. I have set forth only the facts I believe necessary to establish the required foundation for the requested warrant.

4. This affidavit is being submitted in support of an application for a search warrant authorizing the search of the following: Acer Chromebook, Serial Number NESHEAA0024110BE7E7600 (SUBJECT LAPTOP 1); Lenovo Laptop, Serial Number CB20235193 (SUBJECT LAPTOP 2); Gorilla Thumb Drive (SUBJECT THUMBDRIVE 1); Imatic 2GB Thumb Drive (SUBJECT THUMBDRIVE 2), fully described in

2

Attachment A, attached hereto. These items were previously seized by, and are currently in the custody of HSI Syracuse. This warrant is sought in connection with an ongoing criminal investigation of violations of Title 21, United States Code, Sections 952, 960(a)(1) and 841 (importation and attempted distribution of controlled substances, specifically MDMA/Ecstasy).

5. There is probable cause to believe that certain information, herein described, may be found in the following property: SUBJECT LAPTOP 1, SUBJECT LAPTOP 2, SUBJECT THUMBDRIVE 1, and SUBJECT THUMBDRIVE 2, where your affiant believes evidence may be located relating to criminal violations of: Title 21, United States Code, Sections 952, 960(a)(1) & (b)(3) (Importation of a Controlled Substance) and Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), & 846 (Attempted Distribution of a Controlled Substance). There is probable cause to believe that these computers and electronic storage devices contain ledgers, documents, photographs, and records, all of which are evidence, fruits and instrumentalities of the criminal conduct further described below.

## BACKGROUND AND PROBABLE CAUSE

6. On March 11, 2017, Customs and Border Protection (CBP), located at the John F. Kennedy (JFK) international mail branch, conducted a canine examination of international mail coming from Germany to the United States. During this examination, CBP Canine Ranchez positively alerted to the presence of narcotics in a parcel that was mailed from Germany to Matthew LAGOE, 5640 E. Taft Road, #3264, Syracuse, New York. Subsequent to the positive Canine alert, CBP utilized its Border Search Authority to open the package and examine its contents. The

3

package was found to contain 990 each (506 grams) of blue/yellow rectangular shaped tablets stamped "IKEA" secreted in a foil pouch inside a metal tin. The tablets field-tested positive for the presence of amphetamine and MDMA/Ecstasy. The package and its contents were seized by CBP and subsequently turned over to HSI Syracuse for further investigation.

7.  On March 21, 2017, at approximately 0900 hours, Special Agents (SA) and Task Force Officers (TFO) from HSI and the United States Postal Inspection Service (USPIS) set up physical surveillance at the United States Post Office located at 5640 E. Taft Road, Syracuse, New York. Law enforcement was in possession of the original mail parcel that had been sent to LAGOE, which now contained approximately 500 grams of "sham" in place of actual MDMA/Ecstasy.

8.  At approximately 0915 hours, the United States Postal Service (USPS) online tracking system showed the parcel as available for pickup at the Taft Road Post Office. It should be noted that records indicated the status of the parcel was checked numerous times by an individual Internet Provider (IP) address since parcel was mailed.

9.  At approximately 1147 hours, LAGOE arrived at the Post Office in a blue 2007 Chevrolet Impala bearing New York Registration EJD 2875. LAGOE then entered the Post Office, retrieved a USPS delivery slip from Post Office Box #3264, and brought the slip to the Post Office counter. LAGOE handed the delivery slip to the Postal Worker and subsequently received his mail parcel (It should be noted that just prior to LAGOE'S arrival, law enforcement provided the "sham" package to the postal worker). LAGOE signed for the parcel, departed the Post Office, and got in

4

his vehicle.  Once LAGOE started his vehicle, agents and officers moved in and secured LAGOE, his vehicle and the package.

10. Your affiant and TFO Edgar Lorenzo then transported LAGOE to the New York State Police (NYSP) Barracks located approximately five (5) minutes away at 101 North Constellation Way, North Syracuse, New York, for an interview.

11. Your affiant advised LAGOE that he was not currently under arrest, but was only being detained at that time.  You affiant requested LAGOE cooperate with law enforcement.  Your affiant gave LAGOE the option to contact his employer and advise he was indisposed and unable to return to work at the scheduled time, which he declined.

12. After arriving at the NYSP Barracks and prior to receiving his Miranda Warnings, LAGOE advised he did not wish to speak to law enforcement.  Your affiant advised LAGOE that was LAGOE'S right, but again requested LAGOE cooperate with law enforcement.  LAGOE advised he did not wish to speak with law enforcement unless he was given a written contract from law enforcement detailing what his cooperation would get him.  Your affiant advised that a written contract was not an option.

13. Your affiant asked LAGOE what would be found at his residence if law enforcement were to search it.  LAGOE then expressed concern about his girlfriend being taken into custody by law enforcement.  LAGOE stated that his girlfriend, Chelsea GALEK, had no knowledge of LAGOE'S illegal activities.  Your affiant advised LAGOE that GALEK was not the subject of the investigation and there were no plans to take GALEK into custody.  Your affiant then asked LAGOE if he would be willing to consent to a search of his residence and vehicle, to which LAGOE agreed.

5

14. Your affiant then presented LAGOE with a US Immigration and Customs Enforcement (ICE) written Miranda rights waiver, which LAGOE read and signed. Your affiant subsequently presented LAGOE with two ICE Consent to Search forms (ICE Form 73-005), one for LAGOE'S residence located at 6181 Rock Cut Road, Suite 2, Jamesville, New York, and the other for LAGOE'S 2007 Impala. LAGOE read and signed both forms.

15. Once both Consent to Search forms were signed, your affiant advised law enforcement to secure LAGOE'S residence (by not allowing anyone to enter the residence) until your affiant arrived with the keys to search the residence.

16. Your affiant asked LAGOE where any contraband may be located in either LAGOE'S residence or vehicle. LAGOE advised there was a personal use amount of Ketamine in the center console of his vehicle. LAGOE also advised the following narcotics would be found in the following locations in his residence:

     i.  2 THC Cartridges on the kitchen table

     ii.  1 gram of Cocaine on the kitchen table

     iii.  1 THC Cartridge on the bedroom dresser

     iv.  1/4 gram of Ketamine on the entertainment center

     v.  1 Scale on the entertainment center

     vi.  Personal use marijuana

17. Your affiant then departed the NYSP Barracks and returned to the Post Office, where the Impala was located. A search of the Impala resulted in the New York State seizure of a small vial of suspected Ketamine, seized by NYSP Investigator Michael Buck.

6

18. At approximately 1410 hours, HSI Syracuse executed a consent search of the residence, which resulted in the seizure of the following:

    i.  7 tablets of suspected Ecstasy/MDMA

    ii.  1 scale

    iii.  1 Acer Chromebook (SUBJECT LAPTOP 1)

    iv.  1 Lenovo Laptop (SUBJECT LAPTOP 2)

    v.  1 Gorilla Thumb Drive (SUBJECT THUMBDRIVE 1)

    vi.  1 Imatic Thumb Drive (SUBJECT THUMBDRIVE 2)

19. The search also resulted in the New York State seizure of personal use narcotics by NYSP Investigator Buck.

20. At approximately 1500 hours, the search concluded and the residence was secured.

21. Following the conclusion of the search of the residence, Your affiant and TFO Lorenzo returned the residence and vehicle keys to LAGOE and released LAGOE. LAGOE was transported back to his vehicle at the US Post Office by a New York State Trooper.

22. All federally seized evidence was transported back to the HSI Syracuse office by your affiant and TFO Lorenzo and secured in the HSI Syracuse evidence room in accordance with HSI policies and procedures.

23. On March 22, 2017, your affiant and TFO Lorenzo sent the seven (7) tablets of suspected Ecstasy/MDMA to the CBP lab in Chicago via FedEx.

24. On August 22, 2017, HSI Syracuse received the CBP lab report regarding 506 grams/990 tablets of suspected Ecstasy/MDMA, which had been sent to the CBP Lab in Chicago on March 17, 2017. The lab report stated that the 506 grams/990 tablets

7

of suspected Ecstasy/MDMA were identified as MDMA.

25. On September 8, 2017, HSI Syracuse received the CBP lab report regarding the seven (7) tablets of suspected Ecstasy/MDMA. The lab report stated that all seven (7) tablets of suspected Ecstasy/MDMA were identified as MDMA.

26. In my training and experience, it is common practice for traffickers of smuggled goods or controlled substances, including MDMA, to take, or cause to be taken, photographs/videos of themselves, their associates, their property, their drugs, or their proceeds, and usually maintain these photographs/videos in their residences. These photographs/videos may also be stored in electronic storage media, including but not limited to, computers and electronic storage devices.

27. In my training and experience, it is common practice for traffickers of smuggled goods or controlled substances, including MDMA, to keep and utilize personal computers to further their drug trafficking activities. The use of personal computers by drug traffickers, as well as by the general public, has increased dramatically during the past several years. I have participated in investigations where computers, internet-enabled cellular "smartphones," and conventional cellular telephones were seized and searched pursuant to court authorized search warrants that contained digital photographs of bulk cash and pictures of the target with smuggling and drug associates, as well as text messages referencing smuggling and drug transactions.

28. In my training and experience, it is common practice for traffickers of smuggled goods or controlled substances, including MDMA, to use e-mail, social networking websites, and the internet to further their criminal activity, by, among other things, communicating with their coconspirators, meaning others who are involved with

8

and/or or provide assistance with the illegal purchase, possession or manufacture or distribution of controlled substances, and posting information about their exploits.

29. Based upon the foregoing, it is respectfully submitted that there is probable cause to believe that the electronic items contain fruits, evidence, and instrumentalities of violations of federal law, including, but not limited to, Title 21, United States Code, Sections 952, 960(a)(1) & (b)(3) (Importation of a Controlled Substance) and Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), & 846 (Attempted Distribution of a Controlled Substance).

## TECHNICAL TERMS

30. Based on my training and experience, I use the following technical terms to convey the following meanings:

31. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

32. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

9

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

33. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

34. There is probable cause to believe that things that were once stored on the computers and the electronic storage devices described in Attachment A may still be stored there, for at least the following reasons:

35. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

36. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space-that is, in space on the storage medium that is not currently being used by an active file-for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

37. Wholly apart from user-generated files, computer storage media-in particular, computers' internal hard drives-contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can

10

take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

38. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

39. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

40. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

11

41. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

42. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

43. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

44. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

45. I know that when an individual uses an electronic device to obtain unauthorized access to a victim electronic device over the Internet, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that

12

is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

46. *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

47. *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

48. Based upon the above information, there is probable cause to believe that evidence of violations of Title 21, United States Code, Sections 952, 960(a)(1) & (b)(3) (Importation of a Controlled Substance) and Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), & 846 (Attempted Distribution of a Controlled Substance) are concealed on the SUBJECT LAPTOP 1, SUBJECT LAPTOP 2, SUBJECT THUMBDRIVE 1, and SUBJECT THUMBDRIVE 2, more particularly described in Attachment A.  I therefore respectfully request that the attached warrant be issued authorizing the search for the items listed in Attachment B.

13

Michael J. Ball
Special Agent
Homeland Security Investigations

Subscribed and sworn to before
me this _____ day of December 2017

Hon. Thérèse Wiley Dancks
United States Magistrate Judge

14

## ATTACHMENT A
## DESCRIPTION OF ITEMS TO BE SEARCHED

1. Acer Chromebook, Serial Number NESHEAA002411OBE7E7600

2. Lenovo Laptop, Serial Number CB20235193

3. Gorilla Thumb Drive

4. Imatic 2GB Thumb Drive

All items are currently in the custody of the Syracuse, New York office of Homeland Security Investigations.

## ATTACHMENT "B"
## ITEMS TO BE SEARCHED FOR AND SEIZED

Items evidencing violations of Title 21, United States Code, Sections 952, 960(a)(1) & (b)(3) (Importation of a Controlled Substance) and Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), & 846 (Attempted Distribution of a Controlled Substance), including, but not limited to the following:

A.      Any and all computer passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code;

B.      Any and all documents, correspondence, records, E-mails, chats, instant messaging, and Internet history pertaining to potential violations of Title 21, United States Code, Sections 952, 960(a)(1) & (b)(3) (Importation of a Controlled Substance) and Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), & 846 (Attempted Distribution of a Controlled Substance);

C.      Any and all lists of customers and related identifying information;

D.      Any and all information pertaining to types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

E.      Any and all information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information)

F.      Any and all information recording **LAGOE'S** schedule or travel from **MARCH 11, 2017** to the present;

E.      Records of IP Addresses used and other records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

F.      Any and all bank records, checks, credit card bills, account information, and other financial records;

G.      Evidence of user attribution showing who used or owned the items described in Attachment A at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

The authorization includes the search of electronic data to include deleted data, remnant data and slack space.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

16